**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:08-1821-RBH |
| | ) | |
| DOUGLAS W. BRADBURY, | ) | |
| RUBY S. BRADBURY, | ) | |
| MAURICE E. FERREE, and | ) | |
| JOY C. FERREE. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

The United States respectfully submits this memorandum of law in support of its Motion for Partial Summary Judgment. The United States filed this action to reduce to judgment federal income tax liabilities the IRS assessed against Defendants Douglas and Ruby Bradbury. Through this action the United States also seeks to foreclose federal tax liens that arose as a result of the Bradburys' 1994-1996 tax assessments on real property that belonged to them at the time the liens arose, but that currently belongs to Defendants Maurice E. and Joy C. Ferree.

The Court has already entered judgment against the Bradburys, with their consent, for their 1994-1996 tax liabilities, in addition to liabilities for other years. The United States now seeks the Court to enter summary judgment against the current defendants, allowing the United States to foreclose its federal tax liens against the Bradburys on property now belonging to the Ferrees. The undisputed material facts demonstrate that, as a matter of law, the United States is entitled to foreclose its federal tax liens on the subject property without any set-offs or

subrogation of its interest.[1]

## SUMMARY OF ARGUMENT

The undisputed material facts show that, as a matter of law, the United States has valid tax liens on the subject property, and that it is entitled to foreclose those liens. The IRS assessed federal tax liabilities against the Bradburys for the years 1994-1996. Under the Internal Revenue Code, a lien arises in favor of the United States upon all of a taxpayer's property at the time the IRS assesses a liability, and continues until the liability is satisfied or becomes unenforceable by lapse of time. The Bradburys' owned the subject property when the IRS assessed the 1994-1996 liabilities against them, and therefore, federal tax liens attached to the property. The Internal Revenue Code allows the United States to foreclose upon property to which its liens have attached. The tax liens were not satisfied when the Ferrees acquired the property, and still remain on the property today. Accordingly, the United States is entitled to foreclose its liens on the subject property.

Additionally, the Ferrees' purported affirmative defenses are meritless. First, the United States filed this action within the statute of limitations. Although the limitations period for filing a tax-collection action is ordinarily 10 years from the date of the tax assessments at issue – and the United States filed this action beyond 10 years from the date of the Bradburys' assessments – attempts the Bradburys made to resolve their liabilities with the IRS extended the limitations

---

[1] As explained in the Motion for Partial Summary Judgment filed herewith, the United States is filing a motion for leave to amend its complaint to add Wachovia Bank as a defendant to this action. Accordingly, the United States now seeks summary judgment allowing it to foreclose on the Ferrees' property, but does not seek an order of sale. If the Court finds that foreclosure of the subject property is warranted, the United States will seek an order of sale once it has resolved the priority of its and Wachovia's respective interests in the property.

period.  Specifically, under the Internal Revenue Code, the Bradburys' submission of an offer and compromise, and their request for a collections due process hearing, tolled the limitations period such that this action is not time-barred.

The undisputed facts also show that the Ferrees do not qualify for their main defense of equitable subrogation.  This doctrine permits a creditor to assume the rights and priority of a prior creditor under certain circumstances.  A key requirement for equitable subrogation in South Carolina, however, is that the party asserting the doctrine was unaware of the previous liens encumbering the property.  Here, the Ferrees admit they knew of the United States' federal tax liens when they purchased the subject property.  Accordingly, their equitable subrogation defense fails as a matter of law.  Furthermore, the facts show that the Ferrees are not the real parties at interest in this action, and therefore, awarding an equitable remedy in their favor is not appropriate.

Finally, the Ferrees' equitable defenses to set-off the United States' recovery in this action also fail as a matter of law.  The Ferrees argue that, because the IRS did not collect a surplus that resulted from the foreclosure sale at which they purchased the subject property, the United States waived its ability to collect this surplus, and its recovery in this case should be set-off by the surplus's value.  The IRS, however, did not have the ability to collect the surplus after the foreclosure sale.  At that time, the Bradburys had entered an installment agreement with IRS to pay their tax liabilities.  The Internal Revenue Code and treasury regulations prohibit the IRS from levying funds while an installment agreement is in place.  Therefore, the IRS did not waive its ability to collect this surplus.  Rather, it did not have this ability in the first place.

The Ferrees also argue that because the IRS did not collect the surplus, the United States

3

should be required to give the Ferrees credit for the surplus under the doctrine of estoppel. But, to apply estoppel against the government, a party must show that the government committed affirmative misconduct. Not submitting a claim for surplus funds is not an affirmative act. Nor is it misconduct. The Ferrees have not alleged affirmative misconduct, nor can they prove it, given the prohibition against levying funds when an installment agreement is in effect. Accordingly, the United States is entitled to foreclose its federal tax liens without any deductions or set-offs.

## FACTS

### Douglas and Ruby Bradbury's 1994-1996 Federal Tax Liabilities

Douglas and Ruby Bradbury failed to pay their income taxes for the years 1994, 1995, and 1996. As a result, the IRS assessed taxes, penalties, and interest for these years against the Bradburys, gave them notice of each assessment, and made demands on them for payment. Despite receiving such notices and demands, the Bradburys failed to pay these liabilities. United States' Statement of Material Facts at ¶¶ 1-2.

On a number of occasions, however, the Bradburys attempted to resolve their tax liabilities with the IRS at the administrative level. On August 12, 2005, the Bradburys submitted an offer in compromise to the IRS. The IRS rejected it 128 days later, on December 18, 2005. *Id.* at ¶ 3. Next, on April 11, 2006, the Bradburys requested a collection due process hearing. The IRS resolved the hearing against the Bradburys 280 days later, on January 16, 2007. *Id.* at ¶ 4. Finally, on October 10, 2007, the IRS entered into an installment agreement with the Bradburys for payment of their 1994-1996 tax liabilities, in addition to liabilities they accrued for other tax periods. While the installment agreement was in effect, a code was placed on the Bradburys' account in the IRS's computer system that prohibited IRS employees from acting outside the

installment agreement to collect the Bradburys' unpaid taxes. *Id.* at ¶ 5. This effort ultimately failed, and led the United States to file this action.

As a result of the Bradburys' failure to pay their tax liabilities, interest and other statutory additions on the assessments continued to accrue. As of May 25, 2009, the Bradburys owe the United States an unpaid balance of $299,170.99 for the 1994-1996 tax periods, plus further interest and statutory additions thereon as allowed by law from May 25, 2009 to the date of payment. *Id.* at ¶ 6. With the Bradburys' consent, the Court entered judgment against the Bradburys on July 16, 2009 that includes these 1994-1996 liabilities. *See* Docket Entry 32.

### Federal Tax Liens on the Subject Property

On the dates the IRS assessed the liabilities described above, liens arose in favor of the United States under 26 U.S.C. § 6321 and attached to all property and rights to property, whether real or personal, belonging to the Bradburys. The IRS recorded a Notice of Federal Tax Lien on September 11, 1997 in Pickens County, South Carolina with respect to the Bradburys' 1994-1996 tax assessments. This Notice of Federal Tax Lien states that it must be refiled by July 9, 2007 for the 1994 and 1995 assessments, and by June 18, 2007 for the 1996 assessment. The IRS refiled the Notice of Federal Tax Lien for all three periods on February 28, 2007. *Id.* at ¶ 10.

Through this action, the United States seeks to foreclose its federal tax liens on real property the Bradburys owned when the liens arose, located at 215 Strawberry Lane, Clemson, South Carolina, 29631 ("the subject property"). *Id.* at ¶ 8. Douglas Bradbury acquired the subject property on May 1, 1947. He conveyed an interest in the property to Ruby Bradbury on September 3, 1960. *Id.* at ¶ 9.

In November 2001, the Bradburys refinanced a mortgage they obtained on the subject

5

property in 1996.  *Id.* at ¶ 11.  The attorney who handled the closing of the 2001 loan, James

Williams, failed to locate the Notice of Federal Tax Lien when he performed the title search.  As

a result, although the 1996 mortgage was satisfied with the closing of the 2001 loan, the tax liens

were not, and remained on the subject property.  *Id.* at ¶ 12.  In 2003, the Bradburys refinanced

the property again, obtaining another loan which they used to satisfy the 2001 mortgage.  *Id.* at ¶

13.  Once again, James Williams performed the title search for the 2003 loan and failed to locate

the federal tax liens.  Accordingly, the federal tax liens were not satisfied with the closing of the

2003 loan and remained on the subject property.  *Id.* at ¶ 14.

### Maurice and Joy Ferree's Acquisition of the Subject Property

On April 26, 2006, the holder of the Bradburys' 2003 mortgage, Deutche Bank National

Trust Company, sued in the Court of Common Pleas for Pickens County, South Carolina to

foreclose its mortgage on the subject property.  Deutche Bank did not include the United States in

that suit.  On July 14, 2006, the court ordered the property to be sold.  *Id.* at ¶ 15.  At the

foreclosure sale on November 6, 2006, an individual named Joseph Volmer successfully bid to

purchase the subject property for $425,000.  *Id.* at ¶ 16.

Defendants Maurice and Joy Ferree voluntarily acquired the subject property by

purchasing an assignment of Mr. Volmer's foreclosure-sale bid.  *Id.* at ¶¶ 17, 20.  At the time they

purchased the property, the Ferrees knew of the federal tax liens that encumbered it.  *Id.* at ¶ 18.

They received title to the subject property on January 11, 2007.  *Id.* at ¶ 17.  None of the proceeds

from the foreclosure sale were applied to the United States' federal tax liens.  *Id.* at ¶ 16.

Surplus funds of $51,354.76 remained after the foreclosure sale.  On February 14, 2008,

the Special Referee in the foreclosure suit notified the parties to that suit of the surplus, giving

6

them 45 days to file a claim for those funds. *Id.* at ¶ 21. Attorney Mason A. Goldsmith, who represents James Williams' professional malpractice insurance company (and who also represents the Ferrees in this action), notified the IRS of this surplus. On March 24, 2008, Mr. Goldsmith notified the IRS of the Special Referee's notice of surplus funds, and the deadline to file a claim for them. *Id.* at ¶ 22. At this time, however, due to the Bradburys' installment agreement with the IRS, the code in the IRS computer system prohibiting collection outside the Bradburys' installment agreement was still in place. Accordingly, the IRS did not seek to collect the surplus funds. *Id.* at ¶ 23.

### Representation and Indemnification of Interested Parties

Attorney Mason Goldsmith represents James Williams and his professional liability insurance company. *Id.* at ¶ 24. Although in this action, Mr. Goldsmith also represents Maurice and Joy Ferree, the Ferrees do not pay Mr. Goldsmith's legal fees. Rather, James Williams' professional liability insurance company pays Mr. Goldsmith's fees. *Id.* at ¶ 25. The Ferrees, however, have no knowledge of this arrangement. In fact, they have no understanding of why they are receiving free legal representation in this matter, or of who is paying for it. They entered into an attorney-client relationship with Mr. Goldsmith after Mr. Goldsmith called them and offered to represent them in this matter. *Id.* at ¶ 26. Furthermore, the Ferrees believe that title insurance they purchased on the subject property will indemnify them for any funds the United States recovers as a result of this action. *Id.* at ¶ 27.

### ARGUMENT

7

## I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(c) provides that summary judgment is appropriate if (1) there are no genuine issues as to any material fact and (2) the moving party is entitled to judgment as a matter of law.  The party moving for summary judgment bears the initial burden of showing that there are no genuine issues of material facts that should be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986); *Bouchat v. Baltimore Ravens Football Club*, 346 F.3d 514, 522 (4th Cir. 2003).  The moving party can successfully meet that burden by showing the Court that there is an absence of evidence to support the opposing party's case.  *Celotex Corp.*, 477 U.S. at 325.  "(T)he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986).  If the record establishes that the movant has met its burden under Fed. R. Civ. P. 56(c), then the absence of responsive affidavits or other record evidence creating a genuine issue of material fact for trial will justify an order granting the motion.  *See Bouchat,* 346 F.3d at 522.

## II.    THE UNITED STATES IS ENTITLED TO FORECLOSE ITS VALID FEDERAL TAX LIENS ON THE SUBJECT PROPERTY.

The undisputed facts show that the United States has valid federal tax liens on the subject property and that it is entitled to foreclose those liens.  Under 26 U.S.C. § 6321, a lien arises "in favor of the United States upon all property and rights to property, whether real or personal" of any person who is liable to pay a tax who neglects or refuses to do so.  Section 6321's scope "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."  *United States v. National Bank of Commerce*, 472 U.S. 713, 719-720 (1985).  The lien arises at the time the IRS assesses the liability, and continues until the liability is

8

"satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. *See also*

*United States v. National Bank of Commerce*, 472 U.S. 713, 719 (1985). To enforce the lien, the

Internal Revenue Code authorizes the United States to foreclose upon property to which its liens

have attached. 26 U.S.C. § 7403.

On June 9, 1997, the IRS assessed taxes, penalties and interest against the Bradburys for

tax years 1994 and 1995; on May 19, 1997 the IRS assessed liabilities against the Bradburys for

1996. The Certificates of Assessments (Form 4340) attached to the Declaration of Revenue

Officer Shannon Glaze, submitted herewith, prove these assessments. *See* United States'

Statement of Material Facts, Exhibit 1, Attachment A. These documents establish a presumption

that the IRS properly made the assessments. *See United States v. Sarubin*, 507 F.3d 811, 816 (4th

Cir. 2007); *Audio Investments v. Robertson*, 203 F. Supp.2d 555, 561 (D.S.C. 2002).

Accordingly, the United States' federal tax liens arose on the dates of these assessments and

attached to all of the Bradburys' property, including the subject property. *See* 26 U.S.C. §§ 6321,

6322. As discussed above, the Bradburys owe a balance of $299,170.99 on their 1994-1996

assessments, calculated as of May 25, 2009, plus fees, interest, and all statutory additions

thereafter as provided by law. *See Sarubin*, 507 F.3d at 815 (finding Internal Revenue Code §

6601(a) to "plainly require a dilatory taxpayer to pay interest accruing from the date the tax is due

and compounding until the date the total obligation is paid"). To be sure, the Bradburys have

accepted that this calculation of their liability is accurate. With the Bradburys' consent, the Court

entered judgment against them for the 1994-1996 tax periods, among others. *See* Docket Entry

32.

It is undisputed that the federal tax liens still encumbered the subject property when the

9

Ferrees took possession of it.  The Ferrees acquired the property on January 11, 2007 – after the federal tax liens arose.  The liens were not previously satisfied when the Bradburys refinanced the property because of James Williams' failure to locate the federal tax liens when the loans were closed.

That the tax liability at issue is not the Ferrees' has no effect on the United States' ability to foreclose its federal tax liens.  Under the Internal Revenue Code, "[o]nce a proper Notice of Federal Tax Lien is filed, the lien is valid against a subsequent purchaser of the encumbered property, provided that the purchaser is given notice of the encumbrance."  26 U.S.C. § 6323(a); *United States v. Feinstein*, 717 F. Supp. 1552, 1556 (S.D. Fla. 1989); *see also United States v. Taylor*, Case No. 6:99-947-24, 2000 U.S. Dist. LEXIS 15601, at *12 (D.S.C. Sept. 28, 2000) ("The lien arises on the date of assessment and continues in effect against all subsequent transferees.") (citing *United States v. Bess*, 357 U.S. 51, 57 (1958)).

It is also undisputed that the United States recorded Notices of Federal Tax Liens before the Ferrees acquired the property.  The IRS recorded a Notice of Federal Tax Lien in Pickens County, South Carolina, where the property is located, on September 11, 1997.  As stated above, the Ferrees acquired the property on January 11, 2007.  Moreover, the Ferrees admit that they knew of the federal tax liens when they purchased the property.  Therefore, the United States' tax liens attached to the Ferrees' interest in the subject property, and the United States is entitled to foreclose on those liens.

III.    **THE FERREE'S AFFIRMATIVE DEFENSES ARE UNAVAILING.**

A.      **The Statute of Limitations Does Not Bar This Action.**

The Ferrees have asserted that the statute of limitations bars this tax-collection action.  *See*

Answer to Second Amended Complaint, D.E. 29 at ¶ 28.  The undisputed facts show that this is

not true.  Although the Internal Revenue Code imposes a 10-year limitations period for collecting

a tax after it is assessed, 26 U.S.C. § 6502, certain events suspend the running of the limitations

period.  In this case, two such events occurred that bring this suit within the statute of limitations.

The first event is the Bradburys' offer in compromise to the IRS.  *See United States v.*

*Elton*, 429 F. Supp. 2d 561, 562 (E.D.N.Y. 2006).  The Internal Revenue Code tolls the

limitations period during any time in which the IRS is prohibited from assessing or collecting a

tax liability.  26 U.S.C. § 6503(a)(1).  Treasury regulations prohibit the IRS from collecting a

taxpayer's liability during the time an offer in compromise is pending, plus a period of 30 days

following a rejection of an offer.  26 C.F.R. § 301.7122-1(g).  Consequently, submitting an offer

in compromise to the IRS "tolls the running of the statute of limitations while the offer is under

consideration by the IRS and for a period of 30 days following any rejection of the offer."  *See*

*United States v. Haught*, Case No. 1:06-cv-40, 2007 U.S. Dist. LEXIS 86707, at *9   (N.D. W.

Va. November 16, 2007).  The Bradburys submitted an offer in compromise to resolve their tax

liabilities on August 12, 2005.  The IRS rejected the offer on December 18, 2005.  This therefore

tolled the limitations period for 158 days: the 128 days during which the offer was pending, plus

30 days after the IRS rejected the offer.

The second tolling event occurred when the Bradburys' requested a collection due process

hearing from the IRS.  The Internal Revenue Code explicitly states that when a taxpayer requests

such a hearing, the limitations period "shall be suspended for the period during which such

11

hearing, and appeals therein, are pending." 26 U.S.C. § 6330(e)(1); *see also* 26 C.F.R. § 301.6330-1(g). Accordingly, the limitations period stopped running from when the Bradburys requested a collection due process hearing on April 11, 2006, until the IRS resolved the hearing against the Bradburys on January 16, 2007. The collection due process hearing thus tolled the limitations period for 280 days.

Combined, the Bradburys' offer in compromise and their collection due process hearing tolled the limitations period for a total of 438 days. The IRS assessed the Bradburys' 1996 liabilities on May 19, 1997, and assessed the 1994 and 1995 liabilities on June 9, 1997. The regular 10-year limitations period for the United States collect these liabilities would have run on May 19, 2007 and June 9, 2007, respectively. But with the limitations period tolled for 438 days, the limitations period extended to July 30, 2008 for the 1996 tax period, and August 20, 2008 for the 1994 and 1995 tax periods. The United States filed this action on May 7, 2008 – within the extended limitations period. *See* Complaint, D.E. 1. Accordingly, this action is not time-barred.

**B.    The Ferrees Do Not Qualify for Equitable Subrogation Because They Knew of the Federal Tax Liens When They Purchased the Property.**

The Ferrees have raised the doctrine of equitable subrogation in their defense. Answer to Second Amended Complaint, D.E. 29 at ¶ 20, 22. This doctrine permits a subsequent creditor to assume the rights and priority of a prior creditor under certain circumstances. *Dodge City v. Jones*, 454 S.E.2d 918, 920 (S.C. Ct. App. 1995); *see also Mellon Investor Services, LLC v. Longwood Country Garden Centers, Inc.,* 263 Fed. Appx. 277, 283 (4th Cir. 2008). The Ferrees believe that equitable subrogation should apply in this action to place them in the same position as the holder of the Bradburys' 1996 mortgage at the time the Bradburys paid off that mortgage with their 2001 refinance. *See* Answer to Second Amended Complaint, D.E. 29 at ¶ 22. Towards

12

that end, they assert that they have an interest in the subject property superior to the United States' equal to the balance of the 1996 mortgage that the 2001 loan paid. *See* Response to United States' First Set of Interrogatories, United States' Statement of Material Facts, Exhibit 6 at 4.

Typically, the priority of a federal tax lien as to liens created under state law is governed by the rule "the first in time is the first in right." *United States v. Pioneer American Ins. Co.,* 374 U.S. 84, 87 (1963). Nevertheless, the Internal Revenue Code provides that "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324." 26 U.S.C. § 6323(i)(2). Accordingly, we must look to South Carolina law to determine whether the Ferrees qualify for equitable subrogation. *See First Fed. Sav. Bank v. United States*, 118 F.3d 532, 533 (7th Cir. 1997) (applying Indiana law).

The undisputed facts show that the Ferrees do not satisfy one of South Carolina's basic requirements for equitable subrogation: "The party claiming subrogation must not have actual knowledge of any intervening lien creditors." *Dodge City v. Jones*, 454 S.E.2d 918, 920 (S.C. Ct. App. 1995); *Dedes*, 414 S.E.2d at 158; *see also Pee Dee State Bank v. Prosser*, 367 S.E.2d 708, 713 (S.C. Ct. App. 1988) (stating that a party "may assert the doctrine of equitable subrogation so long as the party has no actual notice of a prior mortgage").[2] The Ferrees do not dispute that they

---

[2] To qualify for equitable subrogation, a party must also prove that (1) it has paid the debt, (2) it was not a volunteer but had a direct interest in the discharge of the lien, (3) it was secondarily liable for the debt or the discharge of the lien, and (4) the allowance of the equity will not do injustice to the other party. *Dedes v. Strickland*, 414 S.E.2d 134, 158 (S.C. 1992). The Ferrees must meet all of these requirements, and, for purposes of defeating summary judgment on an issue on which they have the burden of proof, must produce some record evidence supporting each element. But the United States cites the undisputed record evidence

knew of the United States' federal tax liens when they purchased the subject property.  In fact, they admitted this in response to the United States' Requests for Admission.  *See* United States' Statement of Material Facts at ¶ 18.

Consequently, as "the party claiming subrogation," the Ferrees plainly do not meet a fundamental requirement for the doctrine.  Instead, the Ferrees simply purchased a property with valid federal tax liens encumbering it.  "The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes it passes cum onere . . . ."  *United States v. Bess*, 357 U.S. 51, 57 (1958) (internal quotation omitted).

Additionally, the circumstances of this case do not justify awarding the Ferrees an equitable remedy because they are not the real parties in interest.  The Ferrees have already protected themselves by purchasing title insurance.  Indeed, the Ferrees believe that this title insurance will indemnify them for any funds the United States recovers as a result of this action.  *See* United States' Statement of Material Facts at ¶ 27.

Rather, the interested party is the insurance company that covered attorney James Williams for professional malpractice.  In fact, this insurance company – not the Ferrees, or any party in privy with them – is funding the Ferrees' defense in this case.  Presumably, the company is concerned that this action threatens their interest due to Mr. Williams' failure to discover the federal tax liens at issue during the Bradburys' refinances of the subject property.  As a result, the Ferrees appear indifferent to this action.  Mrs. Ferree's deposition makes clear that the Ferrees

---

that the Ferrees actually knew of the federal tax liens, which means that, as a matter of law, they do not qualify for equitable subrogation, regardless of the other factors.

have no understanding of why they are receiving free legal representation, or of who is paying for

it:[3]

> Q.  Now, Mrs. Ferree, Mr. Goldsmith represents you and your husband in this case, correct?
> A.  Yes.
> Q.  Are you paying his legal fees?
> A.  No.
> Q.  Who is?
> A.  I don't know.
> Q.  You have no idea who is paying your lawyer's bills?
> A.  No, I don't.
> Q.  Does Mr. Goldsmith submit bills to you?
> A.  No.
> Q.  How did you first come in contact with Mr. Goldsmith?
> A.  I don't remember.
> Q.  Did you know Mr. Goldsmith before he represented you in this litigation that you are taking this deposition for?
> A.  No.
> Q.  When you got served with the summons and the complaint in this case, what did you do?
> A.  I would say:  Nothing.  People have just called us about it.
> Q.  When you got the complaint in this case, you didn't pick up the phone and call anybody?
> A.  No.
> Q.  You didn't call Mr. Goldsmith?
> A.  No.
> Q.  How was it that Mr. Goldsmith ended up being your lawyer for this action?
> A.  I think he must have called us.

*See* United States' Statement of Material Facts, Exhibit 15 at 14-15.  As stated above, the Ferrees

do not perceive this lawsuit to actually put their interest in the subject property at risk; they fully

expect their title insurance to indemnify them from any losses that result.  Absent Mr. Williams'

malpractice insurance company's efforts, the Ferrees likely would not be defending this action.

---

[3]  Although the Ferrees apparently lack actual knowledge of this fee arrangement, their interrogatory responses explain that their attorney submits his bills to an insurance company (identified only as "Hartford") that provided malpractice insurance to James Williams.  *See* United States' Statement of Material Facts, Exhibit 6 at 6.

In *First Federal Savings Bank v. United States*, 118 F.3d 532 (7th Cir. 1997), the Seventh Circuit refused to apply equitable subrogation under similar circumstances.  In that case, "First Federal acknowledged that the bank's title insurer was paying the costs of this litigation. This acknowledgment lends credence to the government's argument that the title insurer, and not First Federal, is the real party in interest here."  *Id.* at 534.  Assessing the equities, the court observed that the insurance company, as a profit-maximizing entity, would pay the legal fees only if it expected that doing so would save it money.  *Id.* at 534 n.3.  Such savings, in turn, would reduce the government's overall recovery such that "the fee-paying agreement amounts to an attempt by the insurer to shift some of its expected payout cost to the public fisc."  *Id.* Therefore, because an equitable remedy was sought, the court refused "to elevate form over substance by disregarding the insurer's interest in the outcome of this litigation."  *Id.*  The Court should do the same here.  Applying equitable subrogation would not serve the Ferrees, but would only serve only a professional malpractice insurance company seeking to avoid losses due to its customer's negligence.

C.    **The United States' Recovery Should Not Be Set-Off by the Value of the Surplus Resulting from the Previous Foreclosure Sale of the Subject Property.**

The Ferrees argue that, as a matter of equity, the United States' recovery in this case should be set-off by the value of the surplus that resulted from the previous foreclosure sale of the subject property.  The Ferrees base these arguments on the idea that it is unfair for the United States to collect these funds now, when it previously received notice of the surplus, was entitled to collect it, yet declined to do so.  *See* Answer to Second Amended Complaint, D.E. 29 at ¶¶ 23-26.  First, as explained above, the court should not award the Ferrees any equitable relief because

16

James Williams' malpractice insurance company, not the Ferrees, is the real party at interest in this action.

Moreover, a key premise to the Ferrees' argument – that the IRS was entitled to collect the surplus – is false.  To the contrary, the IRS was prohibited from levying these funds by law. When the time arose in the foreclosure proceeding to claim the surplus, the Bradburys had an installment agreement with the IRS for payment of their past-due taxes.  The Internal Revenue Code prohibits the IRS from levying a taxpayer's property or rights to property when an installment agreement is in effect.  26 U.S.C. § 6331(k).  Towards that end, treasury regulations state: "No levy may be made to collect a tax liability that is the subject of an installment agreement . . . during the period that an installment agreement is in effect, and for 30 days immediately following the termination of an installment agreement."  26 C.F.R. §301.6331-4(a). The Internal Revenue code defines "levy" as "the power of distraint and seizure by any means." 26 U.S.C. § 6331(b).  Accordingly, due to the Bradburys' installment agreement, the IRS placed a code in its computer system prohibiting collection of the Bradburys' liabilities outside the installment agreement.  Therefore, the IRS did not waive its ability to collect this surplus, as the Ferrees allege.  *See* Answer to Second Amended Complaint, D.E. 29 at ¶ 26.  Rather, the IRS did not have such an ability.

The Ferrees also argue that because the IRS did not collect the surplus, "the United States of America should be required to give Defendants credit for the surplus under the Doctrine of Estoppel.  *Id.* at ¶ 25.  The doctrine of estoppel, however, does not apply here.  "Equitable estoppel is a doctrine that is rarely valid against the government.  Courts have applied estoppel to the federal government in only the narrowest of circumstances."  *United States v. Bloom*, 112

17

F.3d 200, 205 (5th Cir. 1997). Toward that end, "estoppel may only be justified, if ever, in the presence of affirmative misconduct by government agents." *See Dawkins v. Witt*, 318 F.3d 606, 611 (4th Cir. 2003); *United States v. Agubata*, 60 F.3d 1081, 1083 (4th Cir. 1995). Also, a party claiming estoppel must show that the government's misconduct "has caused the private citizen to change his position for the worse." *See Heckler v. Community Health Services*, 467 U.S. 51, 61 (1984); *Agubata*, 60 F.3d at 1083.

The Ferrees have not alleged that the IRS committed affirmative misconduct, nor could they prove it. The essence of the Ferrees' argument is that the IRS failed to act – to claim a surplus – rather than that it engaged in affirmative action. Further, given the prohibition against levying when an installment agreement is in effect, IRS employees would have committed misconduct if they *did* levy on surplus. Accordingly, the IRS cannot have committed affirmative misconduct in failing to collect the surplus. Moreover, the Ferrees have not alleged that the IRS's actions caused them to change their position for the worse. Indeed, the Ferrees have not asserted that the IRS's failure to collect the surplus caused them to take any particular actions at all. Although their attorney, Mason Goldsmith, urged the IRS to collect the surplus, he did not represent the Ferrees at this time. Rather, he did so as the attorney for James Williams and his malpractice insurance company. Therefore, the Ferrees cannot establish the basic requirements for applying equitable estoppel against the government.

**CONCLUSION**

18

The undisputed material facts demonstrate that, as a matter of law, the United States is entitled to foreclose its federal tax liens on the subject property without any off-sets or subrogation.  Accordingly, the United States seeks the Court to enter summary judgment against the current defendants to allow the United States to foreclose  its federal tax liens, for their full value, on the subject property.


Dated: July 23,  2009                     Respectfully submitted,

                                          JOHN A. DiCICCO
                                          Acting Assistant Attorney General, Tax Division

                                          DAVID ZISSERSON (VA Bar No. 68828)
                                          Trial Attorney, Tax Division
                                          U.S. Department of Justice
                                          Post Office Box 14198
                                          Washington, D.C.  20044
                                          Telephone: (202) 514-6479
                                          fax: (202) 514-9868
                                          David.Zisserson@usdoj.gov

                                          W. WALTER WILKINS
                                          United States Attorney

                                          /s/George J. Conits
                                          GEORGE J. CONITS (SC Bar No. 234)
                                          Assistant United States Attorney
                                          105 N. Springs St.
                                          Suite 200
                                          Greenville, SC 29601
                                          Telephone: (864) 282-2116
                                          Fax: (864) 233-3158
                                          george.conits@usdoj.gov

**CERTIFICATE OF SERVICE**

I CERTIFY that the foregoing MEMORANDUM OF LAW IN SUPPORT OF THE

UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT was served this 23rd

of July, 2009 through the Court's CM/ECF system upon the following:

> Mason A Goldsmith
> Love Thornton Arnold and Thomason
> P.O. Box 10045
> Greenville, SC 29603
> 864-242-6360
> Fax: 864-271-7972
> Email: agoldsmith@ltatlaw.com
>
> Milford O. Howard, III
> DUNAWAY & ASSOCIATES
> P.O. Box 1965
> Anderson, SC 29622
> (864) 224-1144
> (864) 224-2083 (facsimile)
> E-mail: chip@dunawayfirm.com

/s/George J. Conits
George J. Conits