IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| United States of America, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | C.A. No. 8:08-1821-HMH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Douglas W. Bradbury; Ruby S. Bradbury; | ) | |
| Maurice E. Ferree; Joy C. Ferree; and | ) | |
| Wachovia Bank, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Plaintiff's motion for partial summary judgment. For the reasons set forth below, the court grants Plaintiff's motion.

I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of federal income taxes assessed against Douglas and Ruby Bradbury (collectively "the Bradburys") for the years 1994, 1995, and 1996, which the Bradburys have failed to pay.[1] As a result of the Bradburys' failure to pay income taxes, "liens arose in favor of the United States under 26 U.S.C. § 6321 and attached to all property and rights to property . . . belonging to the Bradburys." (Pl. Mem. Supp. Summ. J. Attach (Statement of Facts ¶ 7).) In particular, on September 11, 1997, the Internal Revenue Service ("IRS") recorded a notice of a federal tax lien ("1997 lien") against land belonging to the

---

[1] "As of May 25, 2009, the Bradburys owe the United States an unpaid balance of $299,170.99 for the 1994-1996 tax periods, plus further interest and statutory additions thereon as allowed by law from May 25, 2009 to the date of payment." (Pl. Mem. Supp. Summ. J. 5.)

1

Bradburys located at 215 Strawberry Lane, Clemson, South Carolina, 29631 ("the subject property"). (Id. at ¶¶ 8-10.)

In 2001, the Bradburys obtained a mortgage on the subject property ("2001 mortgage") which was used to satisfy a prior mortgage recorded in 1996 ("1996 mortgage"). Jim Williams ("Williams"), the closing attorney on the 2001 mortgage, "missed [the] Federal tax lien during an examination of the title of [the subject] property belonging to [the Bradburys]."[2] (Defs. Mem. Opp'n Summ. J. 5.) The Bradburys again refinanced their home located on the subject property in 2003 ("2003 mortgage"). Williams served as the closing attorney on the 2003 mortgage and again failed to notice the federal tax lien on the subject property. Deutsche Bank National Trust Company ("Deutsche") was the holder of the 2003 mortgage.

"On August 12, 2005, the Bradburys submitted an offer in compromise to the IRS to resolve the[ir] liabilities. Th[e] offer in compromise was pending for 128 days, until the IRS rejected it on December 18, 2005." (Pl. Mem. Supp. Summ. J. Attach (Statement of Facts ¶ 3).) "The IRS entered an installment agreement with the Bradburys on October 10, 2007 for payment of their 1994-1996 tax liabilities." (Id. at ¶ 5.)

On April 26, 2006, Deutsche "sued in the Court of Common Pleas for Pickens County, South Carolina to foreclose its mortgage on the subject property." (Id. at ¶ 15.) On July 14, 2006, the court ordered the subject property to be sold. (Id.) "The judgment of foreclosure established that the approximate debt due Deutsche . . . was $357,258.42 [and] [a]t foreclosure the property brought $425,000.00" and resulted in a surplus of $51,354.76 ("the surplus").

---

[2] "Williams did not personally examine the title nor miss the lien himself, but he has always accepted responsibility for this error committed by his office." (Defs. Mem. Opp'n Summ. J. 5.)

2

(Defs. Mem. Opp'n Summ. J. 6. & Exs. 7-8 (Judgment of Foreclosure & Sale; Notice of Surplus Funds).) Maurice and Joy Ferree ("the Ferrees") purchased the subject property "by taking an assignment from the successful bidder at the Bradbury foreclosure sale." (Id. at 7.) "[B]y the time of their closing, the Ferrees were aware of the [federal] tax lien." (Id.) The Ferrees received title to the subject property on January 11, 2007. (Pl. Mem. Supp. Summ. J. Attach (Statement of Facts ¶ 17 & Ex. 10 (Title to Subject Property).) Plaintiff did not seek to obtain any of the surplus amount from foreclosure although "the IRS knew of the surplus." (Pl. Reply 3.) The Ferrees allege that "the IRS knew about the surplus [and] promised . . . that it was going to pursue the surplus." (Defs. Mem. Opp'n Summ. J. at 11.)

Plaintiff filed a complaint against the Bradburys and the Ferrees on May 7, 2008, seeking to foreclose tax liens on the subject property. A consent judgment was entered against the Bradburys on July 16, 2009. On July 28, 2009, Plaintiff amended the complaint adding Wachovia Bank, N.A. ("Wachovia") as a defendant.[3] Plaintiff filed the instant motion for partial summary judgment on July 23, 2009, "to reduce to judgment income tax liabilities that the IRS assessed against [the Bradburys; and] to foreclose federal tax liens that arose as a result of the Bradburys' 1994-1996 tax assessments on [the subject property] that currently belongs to [the Ferrees]." (Pl. Mem. Supp. Summ. J. 1.) The Ferrees filed a response in opposition to the motion for partial summary judgment on August 10, 2009. Plaintiff filed a reply on August 14, 2009.

---

[3] Wachovia also has an interest in the subject property. (Pl. Mot. Amend. Compl. ¶ 3.) Plaintiff asserts that if "the Court finds that foreclosure of the subject property is warranted, the United States will seek an order of sale once it has resolved the priority of its and Wachovia's respective interests in the property." (Pl. Mem. Supp. Summ. J. 2.)

3

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks "summary judgment allowing it to foreclose on the [subject] property." (Pl. Mem. Supp. Summ. J. 2.) In their response, the Ferrees argue that (1) "the events of the 2001 loan transaction give rise to a legitimate claim of equitable subrogation" and (2) "there

4

should be an offset to [Plaintiff's] claim because [Plaintiff] failed to pursue a $51,000 surplus." (Defs. Mem. Opp'n Summ. J., generally)

### 1. Equitable Subrogation

The Ferrees "believe that they are entitled to the benefit of the doctrine of Equitable Subrogation" which would grant them a "partial priority" over Plaintiff by subrogating the Ferrees to the priority position of the 1996 mortgage. (Ans. Third Am. Compl. ¶ 20.); (Def. Mem. Opp'n Summ. J. 6.)

"Through the doctrine of equitable subrogation, a subsequent creditor can assume the rights and priority of a prior creditor." Dodge City of Spartanburg, Inc. v. Jones, 454 S.E.2d 918, 920 (S.C. Ct. App. 1995).[4]

> A party may be equitably subrogated to the rights of an earlier creditor if: (1) the party claiming subrogation has paid the debt owed to the earlier creditor; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity.

Id.

It is evident from the record that the 1996 mortgage was senior to Plaintiff's lien recorded against the subject property in 1997. "The proceeds of the 2001 [mortgage were used to] pay the balance due on [the] 1996 [mortgage]." (Defs. Mem. Opp'n Summ. J. 5) Likewise, the proceeds from the 2003 mortgage were used to satisfy the 2001 mortgage. (Id. at 6.) Thus, the Ferrees

---

[4] Pursuant to the Internal Revenue Code, "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324." 26 U.S.C. § 6323(i)(2). Hence, the court must discuss and apply South Carolina law regarding subrogation.

5

argue that the 2001 mortgage was equitably subrogated to the priority of the 1996 mortgage because the 2001 mortgage paid off the debt owed under the 1996 mortgage in full. (Id. at 5.) Subsequently, when the 2003 mortgage satisfied the 2001 mortgage, the Ferrees assert that the 2003 mortgage received "partial priority" over Plaintiff's 1997 lien. (Id. at 5-6.)

According to the Ferrees, the "facts establish equitable subrogation in favor of the 2003 lender and this relative priority position, as to the government, should continue through the foreclosure process and benefit them as purchaser." (Id. at 7.) In other words, the Ferrees contend that equitable subrogation places them in the priority position of the 1996 mortgage as it was at the time of the 2001 mortgage.

Plaintiff argues that the Ferrees do not qualify for equitable subrogation because they were aware of the federal tax lien when they purchased the subject property. (Pl. Mem. Supp. Summ. J. 12.) In response, the Ferrees allege that

> the right way to look at this situation is to determine whether or not the 2001 lender and the 2003 lender were entitled to benefit from the doctrine of equitable subrogation . . . . Following our logic, if a lender is entitled to the benefit of the doctrine at the time it makes the loan, the fact that it later comes to light that there was an unknown but intervening lien should not defeat the doctrine of equitable subrogation. The intervening lienholder [Plaintiff] should not get a windfall because [its] lien became known, after the fact of the loan.

(Defs. Mem. Opp'n Summ. J. 8.) The Ferrees fail to cite any case law to support this argument.

South Carolina law clearly states that a "party claiming subrogation must not have actual knowledge of any intervening lien creditors."[5] Jones, 454 S.E.2d at 921. In their response to

---

[5] "Only actual knowledge of an intervening creditor will defeat a claim for equitable subrogation." Jones, 454 S.E.2d at 921 n.1. "While the proper recording of the Judgment [gives] constructive knowledge, . . . constructive knowledge does not defeat [a claim for equitable subrogation]." Id.

6

Plaintiff's requests for admission, the Ferrees admit that they "knew of the federal tax liens on the subject property at the time they purchased it" and after learning of the 1997 lien, they "were assured that they were protected as to the Federal tax liens because they were purchasing title insurance." (Pl. Mem. Supp. Summ. J. Ex. 11 (Ferrees Resp. to Req. for Admis. ¶ 1).) Therefore, it is evident that the Ferrees possessed actual knowledge of the 1997 lien when they purchased the subject property. Accordingly, equitable subrogation does not apply.

### 2. Surplus Set-Off

Next, the Ferrees argue that "[e]quity demands that [the] surplus be offset against the government's lien, because it represented equity that came from the same property that Plaintiff seeks to foreclose." (Defs. Mem. Opp'n Summ. J. 12.) The Ferrees contend that Plaintiff failed in its obligation to attempt to recover the surplus after the foreclosure sale of the subject property. The Ferrees submit that as a result, the amount of the government's lien should be reduced by the surplus amount. (Id.)

All parties were notified of the surplus funds on February 14, 2008. (Defs. Mem. Opp'n Summ. J. Ex. 8 (Notice of Surplus Funds).) On October 10, 2007, however, the IRS entered into an installment agreement with the Bradburys for payment of their 1994-96 tax liabilities. (Pl. Mem. Supp. Summ. J. Attach (Statement of Facts ¶ 5).) Pursuant to 28 U.S.C. § 6331(k)(2)(c) of the Internal Revenue Code, "[n]o levy may be made . . . on the property or rights to property of any person with respect to any unpaid tax during the period that such an installment agreement for payment of such unpaid tax is in effect." See also 26 C.F.R. § 301.6331–4(a) ("No levy may be made to collect a tax liability that is the subject of an installment agreement during the period that a proposed installment agreement is pending with the [IRS]."). Accordingly, at the time that

Plaintiff was given notice of the exact surplus amount, it was unable to collect the surplus because it had entered into an installment agreement with the Bradburys.

The Ferrees allege that "the IRS knew about the surplus before [the October 2007 agreement and] promised . . . that it was going to pursue the surplus." (Defs. Mem. Opp'n Summ. J. 11.) In support of this assertion, the Ferrees provide letters written by their counsel dated May 2, 2007 and March 25, 2008. The letters, however, provide no evidence that the IRS made any contractual or binding agreement to file a claim for the surplus amount. Moreover, the letters are merely the Ferrees' counsel's representations, none of which are supported by any response by Plaintiff or the IRS. Accordingly, the Ferrees have provided the court with no evidence to establish that a set-off of the surplus amount is appropriate. Based on the foregoing, the court grants Plaintiff's motion for partial summary judgment.

Therefore, it is

**ORDERED** that Plaintiff's motion for partial summary judgment, docket number 34, is granted.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
September 1, 2009